UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| **CLYDE A. LONG, JR.,** and **LATOYA L. LONG,** | Case No. 13-60044 |
| Debtors. | |
| **CRYSTAL D. LEWIS,** | |
| Plaintiff, | |
| v. | Adversary Case No. 13-06030 |
| **CLYDE A. LONG, JR.,** | |
| Defendant. | |

**SUPPLEMENTAL OPINION CLARIFYING
BANKRUPTCY COURT'S PRIOR OPINION**

The matter before the Court comes on the District Court's remand for clarification of the memorandum decision this Court published on January 28, 2014.[1] In that opinion, this Court granted the defendant's motion for partial judgment on the pleadings, because the Court found that after the plaintiff rested her case, she had failed to meet her burden of proving by a preponderance of the evidence that the debt Mr. Clyde A. Long, Jr., owed her met the criteria required by Bankruptcy Code section 523(a)(6) to be excepted from discharge.[2] Particularly, the

---

[1] *See* Order Granting Lewis's Mot. for Rehearing at 2, *Lewis v. Long (In re Long)*, 13-06030 (Bankr. W.D. Va. Mar. 24, 2015) ECF Doc. No. 32. For a more detailed review of the facts, see Mem. Decision at 2–3, *Lewis v. Long (In re Long)*, No. 13-06030 (Bankr. W.D. Va. Jan. 28, 2014) ECF Doc. No. 18.

[2] Mem. Decision at 20–21, *Lewis v. Long (In re Long)*, No. 13-06030 (Bankr. W.D. Va. Jan. 28, 2014) ECF Doc. No. 18.

Court found that she had failed to make any showing of two of the necessary elements of section 523(a)(6). On remand, the District Court has posed the limited question of whether:

> [T]he bankruptcy court disagreed with [the decisions of *Doe v. Fleetwood*[3] and *T.K. v. Love*[4]] and concluded the required elements under § 523(a)(6) cannot be established by inference, or if it found that the decisions were distinguishable on their facts and that the requisite injury and intent could not be inferred from the evidence in this particular case.[5]

After review of the cases and the Court's prior decision, and as more fully set forth below, the Court clarifies that it disagrees with the rulings of the Alaska and Missouri courts in *Fleetwood* and *Love*.

## DISCUSSION

*a) The* Fleetwood *and* Love *Decisions*

The District Court's request for clarification specifically cited two cases—*Doe v. Fleetwood* and *T.K. v. Love*. Accordingly, a basic understanding of the facts and reasoning from those cases is important. The Court will consider each in turn.

The *Fleetwood* case dealt with the dischargeability of a civil judgment against a chapter 7 debtor for sexual assault of a minor as well as intentional infliction of emotional distress, which the Superior Court of Palmer, Alaska, entered by default judgment.[6] Thereafter, the court held a hearing to determine the amount of damages, at which Fleetwood and his attorney appeared and presented argument as to why the court should set aside its prior default judgment and hear

---

[3]    *Doe v. Fleetwood (In re Fleetwood)*, A12-00113-GS, 2013 WL 2178096 (Bankr. D. Alaska May 17, 2013).

[4]    *T.K. v. Love (In re Love)*, 347 B.R. 362 (Bankr. W.D. Mo. 2006).

[5]    Order Granting Lewis's Mot. for Rehearing at 2, *Lewis v. Long (In re Long)*, 13-06030 (Bankr. W.D. Va. Mar. 24, 2015) ECF Doc. No. 32.

[6]    *See Fleetwood*, 2013 WL 2178096, at *1.

2

argument in the case.[7]  Based on Fleetwood's arguments, the state court set aside the default judgment, and Fleetwood filed an answer to the complaint denying all allegations against him.[8]

After a contested hearing, at which Fleetwood appeared and represented himself, the court entered findings of fact and conclusions of law, in which it found by clear and convincing evidence that Fleetwood had sexually assaulted Doe and that he did so "intentionally and with reckless disregard for Doe's welfare."[9]  Accordingly, the court entered judgment in Doe's favor and awarded her damages.[10]

Thereafter, Fleetwood petitioned for bankruptcy relief under chapter 7 of the Bankruptcy Code, at which time Doe initiated an adversary proceeding to declare the debt Fleetwood owed her nondischargeable under section 523(a)(6).[11]  In analyzing the dischargeability of the debt, the bankruptcy court acknowledged Doe had the burden of establishing that "Fleetwood had a subjective motive to inflict injury or believe[d] that injury [was] substantially certain to result from his own conduct."[12]  The court then reasoned, however, "[w]here the damages arise from sexual abuse, willfulness is apparent because the subjective motive to inflict harm 'is self evident [sic], either because the tortfeasor knows his conduct is certain or almost certain to cause harm, or because he should know and therefore the intent is inferred as a matter of law.'"[13]  The court then went on to discuss maliciousness, opining, "the nature of the wrongful act necessarily establishes malice because sexual abuse of a minor is inherently an intentional, wrongful act

---

[7]    *See id.*

[8]    *See id.* at *2.

[9]    *Id.*

[10]   *See id.*

[11]   *See id.*

[12]   *See id.* at *6 (internal quotations omitted).

[13]   *Id.* (*quoting Hoult v. Hoult (In re Hoult)*, 243 B.R. 818, 823 (Bankr. M.D. Fla. 1999)).

3

which unquestionably causes damage."[14] Accordingly, the bankruptcy court inferred both willfulness and malice based on the nature of Fleetwood's offense and declared the debts arising therefrom nondischargeable under section 523(a)(6).[15]

Next, and similarly, in the *Love* case, the bankruptcy court had to determine the dischargeability of a debt arising from the debtor's sexual molestation of a minor, upon the victim's motion for summary judgment.[16] After a contested hearing at which Love was represented by an attorney, the Circuit Court of Laclede County, Missouri, convicted him of sexual misconduct in the first degree.[17]

Thereafter, Love petitioned for bankruptcy relief, and the creditor initiated an adversary proceeding against him to have the bankruptcy court declare the debt nondischargeable under section 523(a)(6).[18] The court, in discussing the issue of Love's intent to harm the plaintiff, addressed willfulness and maliciousness separately. First, in discussing willfulness, the court acknowledged the United States Supreme Court's mandate that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[19] Nevertheless, and without further explanation, the *Love* court held, "[t]hat Debtor's actions were intentional and

---

[14] *Id.*

[15] *See id.*

[16] *T.K. v. Love (In re Love)*, 347 B.R. 362, 363 (Bankr. W.D. Mo. 2006).

[17] *See id.*

[18] *See id.* at 365.

[19] *Id.* at 366 (*quoting Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).

4

deliberate is buttressed by the fact that he was convicted of sexually molesting four children . . . . There was nothing accidental or merely reckless about his actions."[20]

Similarly, in discussing maliciousness, the court reasoned that although "the pleadings, affidavits and exhibits on file may not demonstrate that the state court necessarily decided that Debtor intended to cause injury to Plaintiff or independently establish that fact,"[21] "intent to harm is established as a result of Debtor's conviction because, given the nature of the crime, the conviction either establishes that the Debtor knew that his conduct was certain or almost certain to cause harm or permits the Court to infer harm as a matter of law."[22]  Important to the *Love* court's ruling was the Eighth Circuit's decision in *B.B. v. Continental Insurance Co.*, in which that court adopted an inferred-intent theory for sexual molestation in the context of whether a homeowner's insurance policy would indemnify the insured from a civil judgment for child molestation.[23]  Accordingly, the *Love* court determined the civil debt Love owed to the creditor was nondischargeable as a matter of law.[24]

---

[20]    *Id.*

[21]    *Id.* at 367.

[22]    *Id.*

[23]    *See generally B.B. v. Cont'l Ins. Co.*, 8 F.3d 1288 (8th Cir. 1993) (holding, in insurance policy cases, the Supreme Court of Missouri would adopt an inferred-intent standard for a sexual assault case, although the Missouri Supreme Court, up to that point, had only ever applied a subjective-intent standard).

[24]    Interestingly, the Eighth Circuit Bankruptcy Appellate Panel, only one year before the Eighth Circuit's decision in *Love*, specifically addressed a court's ability to "presume" intent for an "inherently wrongful act," in the opinion of *In re Stage*, 321 B.R. 486, 494 (B.A.P. 8th Cir. 2005).  There, the panel ruled, "a presumption of harm is not the same as proving an intent to harm." *Id.* at 495.  The panel reasoned:

> The jury did not find that [the debtor] acted with an intent to harm [the creditor] . . . . By stating the intent to harm is presumed, the Missouri Supreme Court is saying that it is not an element of the offense that must be proved. . . .  As the U.S. Supreme Court has stated "A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense."

*Stage*, 321 B.R. at 495 (*quoting Morissette v. United States*, 342 U.S. 246, 275 (1952)).  Accordingly, the *Stage* court determined that the judgment against the debtor "did not establish that [the debtor] acted maliciously," and,

5

*b) Ms. Lewis's Nondischargeability Suit*

Ultimately, the Court disagrees with both of the aforementioned cases' reasoning,[25] as this Court does not believe that it may imply intent for the purposes of Bankruptcy Code section 523(a)(6), based on its understanding of the Supreme Court's ruling in *Kawaauhau v. Geiger*. In the case at bar, Ms. Lewis has relied upon several theories for establishing Mr. Long's intent. First, at the hearing, counsel for Ms. Lewis seemed to suggest Mr. Long's intent was not relevant at all to the question of dischargeability.[26] Later in the hearing, after the Court ruled that Mr. Long's intent was relevant to the controversy, Ms. Lewis's counsel asserted the doctrine of collateral estoppel established Mr. Long's intent as a matter of law.[27] Now, upon appeal, Ms. Lewis appears to have abandoned these theories entirely and, instead, relies solely upon the argument that the nature of Mr. Long's offense necessarily implies his intent to willfully and

---

instead, only established that the debtor's "actions resulted in an injury to [the creditor] and the judgment reflected that violation of a legally protected right." *Id.*

[25] This is not to say, however, that the Court disagrees with the *Fleetwood* and *Love* courts' conclusions—it merely does not agree with the reasoning. The courts in *Fleetwood* and *Love* do not explain the particular considerations they relied upon in reaching their conclusions, and in the case of *Fleetwood*, at least, it appears the state court specifically found Fleetwood harbored the necessary intent. *See Doe v. Fleetwood (In re Fleetwood)*, A12-00113-GS, 2013 WL 2178096, at *2 (Bankr. D. Alaska May 17, 2013).

Furthermore, neither *Fleetwood* nor *Love* discuss the extent to which a bankruptcy court must infer such intent. In particular, the courts did not explain whether every strict liability offense is per se willful and malicious or if only certain offenses were, and if so, how to distinguish between them.

[26] *See, e.g.*, Transcript at 70:14–16, *Lewis v. Long (In re Long)*, 13-06030 (Bankr. W.D. Va. Nov. 26, 2013) ECF Doc. No. 17 [hereinafter *Transcript*] ("I don't think his intent is relevant. I don't think any of that is relevant."); *id.* at 70:21–23 ("I don't think [Mr. Long's intent] is [relevant], but if his intent is relevant, then what he knew of her age at what time would be.").

[27] *See, e.g.*, *id.* at 71:12–16 ("[I]f intent's an issue, then I should be able to ask these. I don't think intent's an issue; I think we have res judicata. I think you have to give full faith and credit. But there we are, Your Honor."); *id.* at 78:12–79:5 ("[H]ere he's bound by the statute of Carnal Knowledge, otherwise known as Statutory Rape. The child . . . was the person under that protection. The damages that she had were as a result of that. It's per se-ing [sic] that of malice. The Plea Agreement shows that he admitted it, a judicial admission. A Court of equity can't undo an admission. . . . An admission is an admission.").

6

maliciously cause an injury.[28]  Based on the posture of the case and limited scope of the remand, however, the Court will only clarify its opinion with respect to Ms. Lewis's current assertion that the Court must imply intent in strict liability instances under section 523(a)(6).

As enacted by Congress, section 523(a)(6) expressly states, "[a] discharge [under specific provisions of this title] . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."[29]  Thus, the statute expressly requires, without qualification, the moving party to demonstrate by a preponderance of the evidence that any resultant injury stems from the debtor's willful and malicious intent to injure.[30]

Indeed, as mentioned above, in analyzing this provision, the Supreme Court of the United States explained:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."  Or, Congress might have selected an additional word or words, *i.e.*, "reckless" or "negligent," to modify "injury."  Moreover, . . . the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts.  Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."[31]

---

[28]  *See generally* Appellant's Mot. for Rehearing, *Lewis v. Long (In re Long)*, 14-CV-00010 (W.D. Va. Dec. 8, 2014) ECF Doc. No. 12 (asserting throughout that the offense of carnal knowledge of a minor is willful and malicious as a matter of law and other courts consider it per se willful and malicious).

[29]  11 U.S.C. § 523(a)(6).

[30]  *See* Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279, 286–89 (1991).

[31]  *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998) (*quoting* Restatement (Second) of Torts § 8A, Comment *a*, p. 15 (1964)).

7

This Court understands these statements to abrogate a bankruptcy court's discretion to infer or imply a debtor's intent to cause an injury based on his or her intent to act alone, regardless of the nature of the conduct.

Notably, the Supreme Court in *Geiger* specifically considered the question of whether the mere fact an actor's conduct was "deliberate" satisfied the requirements of section 523(a)(6) and ultimately held it did not. In that case, the movants sought to have a debt for a medical malpractice judgment deemed nondischargeable based on the fact that the doctor's actions were "intentional," in that he deliberately acted in a certain manner.[32] In so arguing, the movants relied heavily upon the Supreme Court's reasoning in its decision in *Tinker v. Colwell*.[33]

In *Tinker*, the Supreme Court ruled that a debt arising from "criminal conversation"—defined as "a violation of the marital rights of the husband in the person of his wife, to the exclusion of all others" arising from adultery[34]—satisfied the 1898 Bankruptcy Act's discharge exception, which also required a finding of willful and malicious conduct.[35] In so ruling, the Supreme Court in *Tinker* held that criminal conversation is "wilful [sic] . . . in the sense that it is intentional and voluntary, and we think that it is also malicious within the meaning of the statute."[36]

In reconciling its decision with *Tinker*, the Supreme Court in *Geiger* limited *Tinker* to its facts and clarified:

> The exposition in the *Tinker* opinion is less than crystalline. . . . *Tinker* thus placed criminal conversation solidly within the traditional intentional tort

---

[32]   *See id.* at 62–63.

[33]   *See id.*

[34]   *Tinker v. Colwell*, 193 U.S. 473, 485 (1904).

[35]   *See id.* at 480.

[36]   *Id.* at 485.

8

category, and we so confine its holding. That decision, we clarify, provides no warrant for departure from the current statutory instruction that, to be nondischargeable, the judgment debt must be "for willful and malicious *injury*."[37]

Thus, the Supreme Court limited the scope of the holding of the *Tinker* opinion only to the fact that criminal conversation was, in fact, an intentional tort, while emphasizing that the express language of section 523(a)(6) requires the movant prove more than merely an intent to act—i.e., an intent to injure. In so ruling, the Supreme Court also held that section 523(a)(6) mandates a movant establish the debtor's intent when the injuries arose from a strict liability offense, such as criminal conversation.[38]

Accordingly, the Court understands the *Geiger* opinion to require a movant under section 523(a)(6) to establish the debtor's willful and malicious intent to injure by a preponderance of the evidence and, in this case, begrudgingly does not believe Ms. Lewis has done so. The statutory framework of section 523(a)(6) and subsequent case law is unambiguous in its requirement that the movant must prove the debtor's willful and malicious intent in causing the injury sought to be deemed nondischargeable.[39]

As the Supreme Court reasoned in *Geiger*, "we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."[40] If the

---

[37] *Geiger*, 523 U.S. at 63.

[38] By limiting the *Tinker* opinion to standing only for the proposition that criminal conversation was an intentional tort, this Court understands the Supreme Court in *Geiger* to have rejected the *Tinker* court's supposition that for strict liability offenses, a debtor's intent to act is all that is necessary. *See id.* To drive the point home further, the Supreme Court made certain to explain that the statutory requirement of an intent to injure is what mattered. *See id.*

[39] *See* 11 U.S.C. § 523(a)(6); *Geiger*, 523 U.S. at 61–62; s*ee also Knight v. Eppard (In re Eppard)*, 502 B.R. 458, 465 (Bankr. W.D. Va. 2012).

[40] *Geiger*, 523 U.S. at 62 (*quoting Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988)).

9

Court were to follow the *Fleetwood* and *Love* courts' rulings,[41] it would not only effectively declare any strict liability offense per se nondischargeable, but it would also render any intentional tort for which another court has already entered a judgment nondischargeable as a matter of law. Moreover, such an understanding of section 523(a)(6) would render various other subparts of section 523(a) unnecessary, including (a)(4) for defalcation or (a)(9) for personal injury or death resulting from the debtor's driving while intoxicated.

Furthermore, an understanding of section 523(a)(6) as the *Fleetwood* and *Love* courts champion undermines the fundamental purpose of section 523(a)(6). By including the qualifier "willful and malicious" in section 523(a)(6), Congress placed the additional requirement on the movant to meet a burden beyond merely what the underlying cause of action required and to establish that the debtor unambiguously sought to cause the damages inflicted upon the victim. Although the Court acknowledges such intent may be established in certain situations by collateral estoppel,[42] when the underlying cause of action does not necessitate a finding of intent to injure, the Court does not believe it is able to imply such intent based on the public policy considerations of the antecedent action.[43]

---

[41] At this point, the Court is only addressing the *Fleetwood* and *Love* rulings and not the litany of other cases Ms. Lewis cited in her motion to reconsider, because those cases deal only with statutory rape in the context of homeowner's insurance contracts. *See* Appellant's Mot. for Rehearing at 5 n.2, *Lewis v. Long (In re Long)*, 14-CV-00010 (W.D. Va. Dec. 8, 2014) ECF Doc. No. 12. Although the Court is aware of and agrees with those rulings, it believes those rulings are of limited value in the case at bar, since they deal with the construction of contracts rather than a statutory scheme. *See id.*

[42] *See, e.g.*, *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006) ("State court judgments can collaterally estop the litigation of issues in adversary proceedings in federal bankruptcy court."); *Fox v. Crowgey (In re Crowgey)*, 517 B.R. 639 (Bankr. W.D. Va. 2014) (applying collateral estoppel to establish elements of a dischargeability action).

[43] Moreover, as the *Stage* court acknowledged, a state legislature omitting intent as an element of an offense does not necessarily mean an "intentional" intent is implied and instead, only means intent is not relevant to the offense. *See In re Stage*, 321 B.R. 486, 494–95 (B.A.P. 8th Cir. 2005). Strict liability offenses generally do not imply particular intent because any intent—even if merely negligent or reckless—violates the law. Thus, it is impossible to conclude that "willful and malicious" intent is implied by the offense if merely negligence would suffice for the offense.

In this case, the Court sympathizes with Ms. Lewis and recognizes the egregious nature of Mr. Long's criminal conviction; however, it declines to look to the policy considerations of state statutory rape laws[44] and find that such considerations essentially obliterate the specific language Congress enacted in the Bankruptcy Code.[45] The Court understands and appreciates the policy considerations for such statutes, but it emphasizes that section 523(a)(6) is an entirely separate statute with its own particular elements and underlying public policy considerations.

In Ms. Lewis's case, the state court made no special finding that Mr. Long acted intentionally or willfully, and her counsel provided the Court with no evidence of, and made no showing of, Mr. Long's intent to cause her injuries. Instead, Ms. Lewis relied solely on the criminal conviction, default judgment, and promissory note in her case in chief. Nevertheless, the criminal conviction did not include an element of intent; the default judgment made no special finding of intent; and the promissory note included an admission the obligation was in settlement of an intentional tort[46] but did not include an admission of intent. In fact, during the

---

[44] *See Buzzard v. Commonwealth*, 114 S.E. 664, 666–67 (Va. 1922) (explaining that individuals under the age of consent do not have the legal capacity to give consent to sexual intercourse, even if such an individual does in fact express consent, so the conduct was per se intentional and forcible).

[45] *See, e.g.*, *Mort Ranta v. Gorman*, 721 F.3d 241, 253 (4th Cir. 2013) ("More fundamentally, the concerns [of the parties] are best addressed to Congress, not to this Court. The function of the judiciary is to apply the law, not to rewrite it to conform with the policy positions of litigants. When the statutory language is clear, as it is in this case, our inquiry must end.").

[46] Importantly, Ms. Lewis's counsel seemed to suggest multiple times at the hearing that the fact Mr. Long entered into a consent judgment for an "intentional tort" operated as an admission to his intent for the purposes of section 523(a)(6). *See id.* at 5:6, 32:4–8, 32:19–24, 78:12–19. According to the Court's understanding of the Supreme Court's decision in *Geiger*, however, this assertion is incorrect.

The Court understands the *Geiger* opinion to stand for the proposition that the mere fact that a debt arose due to the debtor's commission of an intentional tort is insufficient to establish the debt's nondischargeability. *See supra* note 38 and accompanying text; *see also Kawaauhau v. Geiger*, 523 U.S. 57, 63 (1998). In doing so, the Supreme Court seemed to be harkening back to the traditional distinction between specific intent and general intent offenses—i.e., the intent to cause the injury compared to the intent only to act—and holding that based on that understanding of the nature of the offenses, not all intentional torts necessarily satisfy section 523(a)(6) as a matter of law. *See Geiger*, 523 U.S. at 63. Essentially, section 523(a)(6) created the burden to prove a debtor's specific intent to injure.

plaintiff's case in chief, she did not provide any evidence from which the Court could make a finding regarding the debtor's mens rea.

At the close of her evidence, counsel for Mr. Long moved for a Judgment on Partial Findings under Federal Rule of Bankruptcy Procedure 7052.[47] At that time, the Court took the matter under advisement and allowed Mr. Long to put on evidence. During the defendant's case was the only time Ms. Lewis attempted unsuccessfully to introduce any evidence regarding Mr. Long's intent.[48] Prior to Mr. Long's motion, however, the plaintiff merely supplied the Court with the state court statutory rape criminal conviction, default judgment, and promissory note.[49] Furthermore, the plaintiff provided no authority regarding the Court's ability to find Mr. Long's intent either though collateral estoppel or implication.[50]

---

Notably, under the traditional framework, courts viewed strict liability offenses as wholly distinct from general and specific intent offenses. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 405–06 & 404 n.4 (1980) (discussing the various hierarchies of intent, modern and traditional); *United States v. Berrios-Centeno*, 250 F.3d 294, 297–98 (5th Cir. 2001) (discussing whether a particular offense required the courts to find a *mens rea* of specific intent, general intent, or strict liability).

[47] Federal Rule of Bankruptcy Procedure 7052 incorporates by reference Federal Rule of Civil Procedure 52(c), which authorizes a court to enter judgment when "a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue. *See* Fed. R. Bankr. P. 7052; Fed. R. Civ. P. 52(c).

[48] *See generally Transcript*, *supra* note 26, at 50:3–77:4 (attempting to elicit testimony from Mr. Long, albeit unsuccessfully, suggesting Mr. Long knew or should have known Ms. Lewis's age prior to the birth of their child and introducing evidence in the form of letters written from jail suggesting Mr. Long knew the plaintiff was a minor during the time he was in jail).

[49] *See generally id.* at 9:18–25:1 (presenting evidence solely of Mr. Long's letters written from prison to the plaintiff, the timing of the relationship, and the state court judgments against Mr. Long). Notably, even if the Court were to consider the letters sent from Mr. Long to the plaintiff when he was in prison as evidence that Mr. Long knew of the plaintiff's minor age and accordingly intent to injure her should be inferred if he intended sexual relations with her once he knew of her age, the plaintiff made no showing that the debt allegedly to compensate for the injury was incurred after this knowledge. Indeed the debtor's testimony that he was unaware of the age of the plaintiff was uncontroverted.

[50] Counsel for Ms. Lewis provided the Court with a litany of case citations, however, upon review, none of the holdings of those cases were controlling to the matters before the Court. *See, e.g.*, *Martin v. Commonwealth*, 630 S.E.2d 291 (Va. 2006) (holding that "constructive force" was sufficient to make a finding of "force" for the crime of "aggravated sexual battery"); *Lear v. Commonwealth*, 77 S.E.2d 424 (Va. 1953) (holding that children under the age of fourteen cannot consent, and a court may convict upon only the victim's testimony); *Parsons v. Parker*, 170 S.E. 1 (Va. 1933) (finding that an individual under the age of fifteen cannot consent to sexual conduct for the state-law offense of statutory rape); *Ridley v. Holt (In re Holt)*, 310 B.R. 675 (Bankr. N.D. Tex. 2004) (determining, without a prior state court judgment, that the debtor committed intentional assault and battery against

Accordingly, based on the Supreme Court's ruling in *Kawaauhau v. Geiger*, and with pensiveness, the Court finds that the plaintiff failed to carry her burden of establishing by a preponderance of the evidence that her resulting injuries stemmed from Mr. Long's willful and malicious intent to injure her.

## CONCLUSION

The Court clarifies its prior ruling to expressly state that it disagrees with the opinions of *Doe v. Fleetwood* and *T.K. v. Love* and holds that in order for a creditor to have a debt declared nondischargeable under section 523(a)(6), he or she must prove by a preponderance of the evidence that the debtor willfully and maliciously caused the injury resulting in the particular debt, and the Court is not permitted to infer such elements.

Date Entered: 4/22/2015

_____
Rebecca B. Connelly
U.S. Bankruptcy Judge

---

the victim, which the court determined was ultimately nondischargeable); *Erickson v. Halverson (In re Halverson)*, 226 B.R. 22 (Bankr. D. Minn. 1998) (finding that the torts of intentional assault, battery, and false imprisonment all satisfied the requirement of willful and malicious, in part, due to the elements of intent in each offense); *In re Pettey*, 288 B.R. 14 (Bankr. D. Mass. 2003) (sanctioning the debtor under Federal Rule of Bankruptcy Procedure 9011 for filing a second bankruptcy petition to discharge a debt which the court had already determined to be nondischargeable); *Pettey v. Belanger (In re Pettey)*, 232 B.R. 543 (D. Mass. 1999) (upholding a ruling that declared a debt owed to the debtor's nieces nondischargeable for sexual assault of minors, at least one claim of which was for forcible or coerced sexual assault); *Robinson v. Louie (In re Louie)*, 213 B.R. 754 (Bankr. N.D. Cal. 1997) (ruling that a partner's claim for unwanted sexual contact based on the debtor's intentional concealment of his contraction of HIV satisfied the willful and malicious requirement of section 523(a)(6)); *In re Carsrud*, 161 B.R. 246 (Bankr. D. S.D. 1993) (holding that forcible rape of adult sister was excepted from discharge); *Davis v. Williams (In re Williams)*, 173 B.R. 912 (Bankr. W.D. Ark. 1994) (granting summary judgment declaring a debt for battery for the debtor striking the creditor satisfied the willful and malicious requirement to except the debt from discharge).