CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 17 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CRYSTAL D. LEWIS, ) | |
| ) | |
| Appellant, ) | Civil Action No. 3:14CV00010 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CLYDE A. LONG, JR., ) | By: Hon. Glen E. Conrad |
| ) | Chief United States District Judge |
| Appellee. ) | |

Crystal D. Lewis filed this appeal from a decision of the United States Bankruptcy Court for the Western District of Virginia, in which the bankruptcy court held that Lewis failed to present sufficient evidence to prove that a debt owed to her by Clyde A. Long was nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code, which excepts from discharge any debt incurred "for willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). The bankruptcy court's decision was initially affirmed by this court on November 24, 2014. However, in response to a petition for rehearing filed by Lewis, the court found it appropriate to remand the case to the bankruptcy court for clarification of its decision with respect to Lewis's assertion that willful and malicious injury should be inferred in the instant case. On remand, the bankruptcy court issued a supplemental memorandum opinion clarifying its decision on this issue. For the following reasons, the bankruptcy court's decision will be affirmed in full.

### Background

Lewis and Long were involved sexually at various times in 1999 and 2000. During the course of their sexual relationship, Lewis was only 12 or 13 years old, and Long was 22 or 23 years old. They conceived a child, who was born in November of 2000.

In August of 2001, Long pled guilty to two counts of carnal knowledge of a child between thirteen and fifteen years of age, in violation of Virginia Code § 18.2-63. He was sentenced to a total term of imprisonment of ten years, with seven years suspended.

Thereafter, Lewis filed a civil suit against Long in the Circuit Court of Culpeper County, alleging intentional infliction of emotional distress, sexual assault and battery, and carnal knowledge of a minor. Long did not make an appearance in the case until he appeared pro se at a default judgment hearing. The Circuit Court entered a default judgment on liability and set the matter for a jury trial to determine damages. Prior to trial, Long, proceeding pro se, and Lewis, through counsel, executed a promissory installment note with a confession of judgment in favor of Lewis in the amount of $1,254,000.00. That judgment is the underlying debt in the instant matter.

On January 10, 2013, Long filed a petition for Chapter 7 bankruptcy. Lewis then brought the underlying adversary proceeding, seeking a determination that the debt owed to her by Long is nondischargeable under 11 U.S.C. § 523(a)(6).

The parties appeared before the bankruptcy court for a bench trial on October 21, 2013. Lewis called Long as her only witness. On direct examination, Long admitted that he and Lewis conceived a child when Lewis was 13 years old, but Long indicated that it was not until "after the fact" that he was told her age. Oct. 21, 2013 Trial Tr. 19. Long also admitted that he pled guilty to two counts of carnal knowledge of a minor in violation of Virginia Code § 18.2-63. When asked about the civil proceedings in state court, Long testified that he appeared in court on the day that the default judgment was entered against him, and that the state court judge asked him some questions. However, the contents of those questions and Long's answers thereto were not elicited or otherwise presented by Lewis. Long testified that after answering the state court

2

judge's questions, the judge entered the default judgment because Long lacked any statutory basis to prevent entry of default.

At the close of Lewis's evidence, Long made a motion to strike. The bankruptcy court construed the motion as a motion for judgment on partial findings under Rule 52(c) of the Federal Rules of Civil Procedure. The bankruptcy court took the motion under advisement and allowed Long to put on evidence in his defense.

On January 28, 2014, the bankruptcy court issued a memorandum opinion and order granting Long's Rule 52(c) motion. The bankruptcy court rejected Lewis's argument that the state court proceedings against Long were entitled to preclusive effect under the doctrine of collateral estoppel, and held that Lewis's evidence was insufficient to establish that Long's debt to her arose from a willful and malicious injury. Accordingly, the bankruptcy court ruled that the debt was not excepted from discharge under § 523(a)(6) and, thus, that Long was entitled to judgment in the adversary proceeding.

Lewis appealed the bankruptcy court's decision. The decision was affirmed by this court on November 24, 2014. Upon review of the record, the court agreed with the bankruptcy court that the state court judgments entered against Long were not entitled to preclusive effect under the doctrine of collateral estoppel, and that Lewis failed to present sufficient evidence to establish that the debt owed to her by Long was for a willful and malicious injury.

Lewis subsequently filed a motion for rehearing, in which she argued that the required elements of injury, willfulness, and malice have been inferred in other bankruptcy cases involving sexual conduct with a minor, and that these elements should have been inferred in the instant case. See, e.g., Doe v. Fleetwood, No. A12-00113-GS, 2013 Bankr. LEXIS 2031, at *20-21 (Bankr. D. Alaska May 17, 2013) (emphasizing that willfulness is "apparent" when "the

3

damages arise from sexual abuse," that "[s]uch inference flows from the generally accepted conception of harm as being inherent in the act of sexually abusing a child," and that "the nature of the wrongful act necessarily establishes malice because the sexual abuse of a minor is inherently an intentional, wrongful act which unquestionably causes damages") (internal citation and quotation marks omitted); T.K. v. Love, 347 B.R. 362, 367 (Bankr. W.D. Mo. 2006) (finding "no reason why the inferred-intent standard, applicable to sexual misconduct against minors in other settings, should not also apply in bankruptcy") (citing cases).

Upon reviewing the record from the bankruptcy court proceedings, the court found it appropriate to remand the case to the bankruptcy court for clarification of the legal and/or factual basis for its decision on this particular issue. Although the bankruptcy court expressly declined to assume, impute, or infer every element of Lewis's cause of action, the court was unable to determine whether the bankruptcy court disagreed with the decisions from other jurisdictions and concluded that the required elements under § 523(a)(6) cannot be established by inference, or if it found that the decisions were distinguishable on their facts and that the requisite injury and intent could not be inferred from the evidence in this particular case.

On remand, the bankruptcy court issued a supplemental memorandum opinion clarifying that it "disagrees with the opinions of Doe v. Fleetwood and T.K. v. Love and holds that in order for a creditor to have a debt declared nondischargeable under section 523(a)(6), he or she must prove by a preponderance of the evidence that the debtor willfully and maliciously caused the injury resulting in the particular debt, and the Court is not permitted to infer such elements." Supp'l Mem. Op. 13, Docket No. 23. The case has been returned to this court for further consideration.

4

### Discussion

A debtor is generally permitted to discharge all debts that arose before the filing of his bankruptcy petition. 11 U.S.C. § 727(b). However, § 523(a) of the Bankruptcy Code sets forth "several limited exceptions to this presumption of dischargeability." Kubota Tractor Corp. v. Strack, 524 F.3d 493, 497 (4th Cir. 2008). "When considering the applicability of an exception to discharge, [courts must] construe the exception narrowly 'to protect the purpose of providing debtors a fresh start.'" Nunnery v. Rountree, 478 F.3d 215, 219 (4th Cir. 2007) (quoting Foley & Lardner v. Biondo, 180 F.3d 126, 130 (4th Cir. 1999)); see also Miller v. J.D. Abrams, Inc., 156 F.3d 598, 602 (5th Cir. 1998) ("The discharge exceptions are to be narrowly construed in favor of the debtor since the aim of the Bankruptcy Code is to give the debtor a fresh start."). The party challenging the dischargeability of a debt bears the burden of proving the debt nondischargeable by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991).

In this case, Lewis sought to have Long's debt to her declared nondischargeable under § 523(a)(6), which excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The scope of this particular discharge exception was analyzed by the Supreme Court in Kawaauhau v. Geiger, 523 U.S. 57 (1998). In Geiger, the Supreme Court ruled that a debt arising from a medical malpractice judgment, which sounded in negligent or reckless conduct, did not fall within the statutory exception provided in § 523(a)(6). In so deciding, the Supreme Court explained as follows:

5

> We confront this pivotal question concerning the scope of the "willful and malicious" injury exception: Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury (as the Kawaauhaus urge), or only acts done with the actual intent to cause injury (as the Eighth Circuit ruled)? The words of the statute strongly support the Eight Circuit's reading.
>
> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional <u>injury</u>, not merely a deliberate or intentional <u>act</u> that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, <u>i.e.</u>, "reckless" or "negligent," to modify "injury."

<u>Geiger</u>, 523 U.S. at 61 (emphasis in original). Based on the wording of the statute and its belief that the interpretation urged by the petitioners would render other provisions of § 523(a) superfluous, the Supreme Court held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." <u>Id.</u> at 64. Instead, "§ 523(a)(6) applies only to 'acts done with <u>the actual intent to cause injury</u>.'" <u>Duncan v. Duncan</u>, 448 F.3d 725, 729 (4th Cir. 2006) (emphasis in original) (quoting <u>Geiger</u>, 523 U.S. at 61).

In <u>Geiger</u>, the Supreme Court also rejected the petitioners' argument that, "as a policy matter, malpractice judgments should be excepted from discharge, at least when the debtor acted recklessly or carried no malpractice insurance." <u>Id.</u>  In so doing, the Court emphasized that "Congress, of course, may so decide. But unless and until Congress makes such a decision, [courts] must follow the current direction § 523(a)(6) provides." <u>Id.</u>

In the instant case, Lewis now advances a similar policy argument. Relying on the policy considerations behind state statutory rape laws, Lewis argues that the existence of willful and malicious injury should be inferred or implied in any case in which a debtor engaged in sexual

6

contact with a minor.* While Lewis's position in this regard is far from frivolous, as evidenced by the caselaw on which she relies, this court finds it unpersuasive. In light of the Supreme Court's decision in Geiger, and in keeping with the court's duty to construe the exceptions to discharge narrowly and in favor of the debtor, the court agrees with the bankruptcy court that a creditor must prove by a preponderance of the evidence that a debt arose from a willfully and maliciously inflicted injury in order to have the debt declared nondischargeable under § 523(a)(6), and that the court is not permitted to infer such elements solely based on the public policy considerations underlying the antecedent action.

As the bankruptcy court noted in its supplemental memorandum opinion, the public policy concerns raised by Lewis are best addressed to Congress, which has the ability to amend the Bankruptcy Code. "The function of the judiciary is to apply the law, not to rewrite it to conform with the policy positions of litigants." Ranta v. Gorman, 721 F.3d 241, 253 (4th Cir. 2013). Thus, when the statutory language is clear, as it is in this case, the court is "not at liberty to deviate from the text in favor of a generalized notion of public policy." Stahl v. Simon, 785 F.3d 1285, 1295 (9th Cir. 2015). Instead, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988).

---

* As explained in the court's previous memorandum opinion, carnal knowledge of a minor is a strict liability offense in Virginia. Virginia Code § 18.2-63, the statute under which Long was charged, makes it a Class 4 felony offense to "carnally know[], without the use of force, a child thirteen years of age or older but under fifteen years of age." Va. Code § 18.2-63(A). Under Virginia law, a thirteen-year-old minor cannot legally consent to sexual intercourse, and her willingness to do so is no defense to the crime of carnal knowledge. See Buzzard v. Commonwealth, 114 S.E. 664, 666-67 (Va. 1922) (explaining that individuals under the age of consent do not have the legal capacity to give consent to sexual intercourse).

7

In the context of this case, the Bankruptcy Code makes clear that unless a debt is the result of a willfully and maliciously inflicted injury, the debt is dischargeable. See 11 U.S.C. § 523(a)(6); Geiger, 523 U.S. at 61. Because Lewis failed to prove by a preponderance of the evidence that Long acted with the willful and malicious intent to injure her, Lewis is not entitled to an exception from discharge under § 523(a)(6).

## Conclusion

For the reasons stated, the court concludes that the bankruptcy court's decision must be affirmed in full. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 17th day of March, 2016.

_____
Chief United States District Judge

8